IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

LEON COOPER,

          Plaintiff,                 No. CIV S-08-2856 GGH P

    vs.

DR. McALPINE, et al.,              <u>ORDER AND</u>

          Defendants.        <u>FINDINGS & RECOMMENDATIONS</u>

_____/

I. <u>Introduction</u>

        Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff alleges that defendants acted with deliberate indifference to his serious medical needs.

        On September 1, 2009, plaintiff filed a summary judgment motion.  On October 16, 2009, defendants filed an opposition to plaintiff's motion and a cross-motion for summary judgment.  Plaintiff did not file an opposition to defendants' cross-motion.  Accordingly, on January 11, 2009, the court ordered plaintiff to show cause for his failure to oppose defendants' motion within fourteen days.  Fourteen days passed and plaintiff did not respond to the January 11, 2009, order.  Nevertheless, the court construes plaintiff's summary judgment motion as an opposition to defendants' motion.

1

1    After carefully reviewing the record, the court recommends that plaintiff's motion

2    be denied and defendants' motion be granted in part and denied in part.

3    II.  Summary Judgment Standards Under Rule 56

4    Summary judgment is appropriate when it is demonstrated that there exists "no

5    genuine issue as to any material fact and that the moving party is entitled to a judgment as a

6    matter of law."  Fed. R. Civ. P. 56(c).

7    Under summary judgment practice, the moving party

8    always bears the initial responsibility of informing the district court
     of the basis for its motion, and identifying those portions of "the
9    pleadings, depositions, answers to interrogatories, and admissions
     on file, together with the affidavits, if any," which it believes
10   demonstrate the absence of a genuine issue of material fact.

11   Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986) (quoting Fed. R. Civ.

12   P. 56(c)).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive

13   issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings,

14   depositions, answers to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment

15   should be entered, after adequate time for discovery and upon motion, against a party who fails to

16   make a showing sufficient to establish the existence of an element essential to that party's case,

17   and on which that party will bear the burden of proof at trial.  See id. at 322, 106 S. Ct. at 2552.

18   "[A] complete failure of proof concerning an essential element of the nonmoving party's case

19   necessarily renders all other facts immaterial."  Id.  In such a circumstance, summary judgment

20   should be granted, "so long as whatever is before the district court demonstrates that the standard

21   for entry of summary judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323, 106 S. Ct. at

22   2553.

23   If the moving party meets its initial responsibility, the burden then shifts to the

24   opposing party to establish that a genuine issue as to any material fact actually does exist.  See

25   Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356

26   (1986).  In attempting to establish the existence of this factual dispute, the opposing party may

not rely upon the allegations or denials of its pleadings but is required to tender evidence of

specific facts in the form of affidavits, and/or admissible discovery material, in support of its

contention that the dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11,

106 S. Ct. at 1356 n. 11.  The opposing party must demonstrate that the fact in contention is

material, i.e., a fact that might affect the outcome of the suit under the governing law, see

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986); T.W. Elec.

Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the

dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the

nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party

need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary

judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

genuine need for trial.'"  Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (quoting Fed. R. Civ. P.

56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,

477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the

court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587, 106 S. Ct.

at 1356.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's

obligation to produce a factual predicate from which the inference may be drawn.  See Richards

v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902

(9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than

simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record

1  taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

2  'genuine issue for trial.'" Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (citation omitted).

3          On February 3, 2009, the court advised plaintiff of the requirements for opposing

4  a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154

5  F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409, 411-12 (9th Cir.

6  1988).

7  III.  Undisputed Facts

8          At all relevant times, plaintiff was a state prisoner at California State Prison-

9  Sacramento (CSP-Sac).  At all relevant times, defendants Brown and Hartwell were employed at

10 CSP-Sac as  Licensed Vocational Nurses (LVN).  At all relevant times, defendant Bal was the

11 Chief Medical Officer at CSP-Sac.  At all relevant times, defendant McAlpine was a medical

12 doctor employed at CSP-Sac.

13         On March 30, 2008, plaintiff was seen at A Facility Treatment and Triage with

14 complaints of a skin rash that had started three days earlier.[1]  Plaintiff's thigh, abdomen and right

15 arm pit were red and swollen.  The right thigh had an open area.  Dr. Reddy ordered Bactrim, two

16 tablets to be taken two times a day for ten days, and Ibuprofen to be taken two times a day for

17 five days for pain.  These drugs were given to plaintiff to take as prescribed.

18         On April 4, 2008, plaintiff returned to the Medical Facility complaining about the

19 wounds on his abdomen, thigh and armpit.  Dr. McAlpine examined plaintiff's wounds and

20 determined that he needed to have the stomach and thigh wounds incised and drained.  He

21 scheduled plaintiff for surgery immediately.

22 /////

23  /////

24

25       [1]  Plaintiff claims that on March 25, 2009, his rash was wrongly diagnosed as having been
   caused by a spider bite.  Defendants dispute this claim.  Because there is no claim by plaintiff
26 that any defendant was involved in this alleged misdiagnosis, it is not a material fact.

1          On April 4, 2008, Dr. Wedell performed an incision and drain of plaintiff's left

2    abdomen wall and right thigh.  The wounds were packed with gauze and he took a wound

3    culture.  Dr. Wedell prescribed Rifampin 600 mg double strength to be taken two times a day for

4    fourteen days and Tylenol 974 mg three times a day for fourteen days as needed for pain.

5    Plaintiff was to keep these medications on his person.  Dr. Wedell also prescribed daily wound

6    dressings by a Registered Nurse in B Facility.  An entry in plaintiff's medical records on April 4,

7    2008, by someone unknown states that plaintiff's wound dressings were to be changed until

8    healed.

9          On April 4, 2008, at 6:15 p.m. plaintiff was seen at B Facility for a dressing

10    change.

11          On April 7 2008, the culture of plaintiff's wounds were confirmed as

12    staphylococcus aureus resistant, i.e. MRSA.[2]

13          On April, 9, 2008, defendant McAlpine ordered that plaintiff could do self-applied

14    dry dressing changes to his abdomen and right thigh wounds for the next five days.

15          On April 18, 2009, defendant McAlpine examined plaintiff.[3]  Plaintiff told

16    defendant McAlpine that he had not taken his Bactrim because a LVN had told him to stop

17    taking it.  Defendant McAlpine wrote in the entry for that date, "the inmate was not aware that

18    both drugs are to be taken concomitantly."  Defendant observed that plaintiff's right arm pit had

19    healed.  The abdomen wall still had loculation (small cavity with fluid) and drainage, and the

20    right thigh had one centimeter of loculation.  The wounds were still active so defendant

21    _____

22          [2] Plaintiff claims that his diagnosis was confirmed on April 4, 2008.  However, the
     records from Quest Diagnostic indicate that the culture was collected on April 4, 2008, and tested
23    on April 7, 2008.  Defendants' Exhibit A, p. 63.

24          [3] In his summary judgment motion, plaintiff alleges that Dr. Wedell saw him on April 18,
     2008, and reordered his treatment plan after seeing that it had been discontinued by defendants
     McAlpine, Brown and Harwell.  However, the entry in plaintiff's medical records from that date
25    is signed by defendant McAlpine.  See Plaintiff's Summary Judgment Motion, Exhibit E.
     Plaintiff's claim that Dr. Wedell examined him on April 18, 2008, and reinstated his treatment
26    plan is not supported by the evidence.

5

1   McAlpine refilled plaintiff's prescriptions for Rifampin and Bactrim for seven days.  Plaintiff

2   was told to return in ten days for nasal swabs to assess MRSA colonization.

3           On April 24, 2008, defendant McAlpine saw plaintiff.  Plaintiff had no new sores.

4   His right armpit and right thigh were healed.  There was no drainage from the abdomen wound.

5   Defendant McAlpine determined that the MSRA had been resolved.  Defendant took a nasal

6   swab to assess MSRA colonization.

7           On May 12, 2008, defendant McAlpine saw plaintiff.  He reported no new sores

8   and that the MSRA swab was negative.  Defendant wrote in plaintiff's records that the MSRA

9   was resolved.

10  IV.  Legal Standard for Eighth Amendment Claim

11          In order to state a § 1983 claim for violation of the Eighth Amendment based on

12  inadequate medical care, plaintiff must allege "acts or omissions sufficiently harmful to evidence

13  deliberate indifference to serious medical needs."  Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct.

14  285, 292 (1976).  To prevail, plaintiff must show both that his medical needs were objectively

15  serious, and that defendants possessed a sufficiently culpable state of mind.  Wilson v. Seiter,

16  501 U.S. 294, 299, 111 S. Ct. 2321, 2324 (1991); McKinney v. Anderson, 959 F.2d 853 (9th Cir.

17  1992) (on remand).  The requisite state of mind for a medical claim is "deliberate indifference."

18  Hudson v. McMillian, 503 U.S. 1, 4, 112 S. Ct. 995, 998 (1992).

19          A serious medical need exists if the failure to treat a prisoner's condition could

20  result in further significant injury or the unnecessary and wanton infliction of pain.  Indications

21  that a prisoner has a serious need for medical treatment are the following:  the existence of an

22  injury that a reasonable doctor or patient would find important and worthy of comment or

23  treatment; the presence of a medical condition that significantly affects an individual's daily

24  activities; or the existence of chronic and substantial pain.  See, e.g., Wood v. Housewright, 900

25  F. 2d 1332, 1337-41 (9th Cir. 1990) (citing cases); Hunt v. Dental Dept., 865 F.2d 198, 200-01

26  (9th Cir. 1989).  McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992), overruled on other

1   grounds, WMX Technologies v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

2              In Farmer v. Brennan, 511 U.S. 825, 114 S. Ct. 1970 (1994) the Supreme Court

3   defined a very strict standard which a plaintiff must meet in order to establish "deliberate

4   indifference."  Of course, negligence is insufficient.  Farmer, 511 U.S. at 835, 114 S. Ct. at 1978.

5   However, even civil recklessness (failure to act in the face of an unjustifiably high risk of harm

6   which is so obvious that it should be known) is insufficient.  Id. at 836-37, 114 S. Ct. at 1979.

7   Neither is it sufficient that a reasonable person would have known of the risk or that a defendant

8   should have known of the risk.  Id. at 842, 114 S. Ct. at 1981.

9              It is nothing less than recklessness in the criminal sense – subjective standard –

10  disregard of a risk of harm of which the actor is actually aware.  Id. at 838-842, 114 S. Ct. at

11  1979-1981.  "[T]he official must both be aware of facts from which the inference could be drawn

12  that a substantial risk of serious harm exists, and he must also draw the inference."  Id. at 837,

13  114 S. Ct. at 1979.  Thus, a defendant is liable if he knows that plaintiff faces "a substantial risk

14  of serious harm and disregards that risk by failing to take reasonable measures to abate it."  Id. at

15  847, 114 S. Ct. at 1984.  "[I]t is enough that the official acted or failed to act despite his

16  knowledge of a substantial risk of serious harm."  Id. at 842, 114 S. Ct. at 1981.  If the risk was

17  obvious, the trier of fact may infer that a defendant knew of the risk.  Id. at 840-42, 114 S. Ct. at

18  1981.  However, obviousness per se will not impart knowledge as a matter of law.

19             Also significant to the analysis is the well established principle that mere

20  differences of opinion concerning the appropriate treatment cannot be the basis of an Eighth

21  Amendment violation.  Jackson v. McIntosh, 90 F.3d 330 (9th Cir. 1996); Franklin v. Oregon,

22  662 F.2d 1337, 1344 (9th Cir. 1981).

23             Moreover, a physician need not fail to treat an inmate altogether in order to violate

24  that inmate's Eighth Amendment rights.  Ortiz v. City of Imperial, 884 F.2d 1312, 1314 (9th Cir.

25  1989).  A failure to competently treat a serious medical condition, even if some treatment is

26  prescribed, may constitute deliberate indifference in a particular case.  Id.

1    Additionally, mere delay in medical treatment without more is insufficient to state

2  a claim of deliberate medical indifference.  Shapley v. Nevada Bd. of State Prison Com'rs, 766

3  F.2d 404, 408 (9th Cir. 1985).  Although the delay in medical treatment must be harmful, there is

4  no requirement that the delay cause "substantial" harm.  McGuckin, 974 F.2d at 1060, citing

5  Wood v. Housewright, 900 F.2d 1332, 1339-1340 (9th Cir. 1990) and Hudson, 112 S. Ct. at 998-

6  1000.  A finding that an inmate was seriously harmed by the defendant's action or inaction tends

7  to provide additional support for a claim of deliberate indifference; however, it does not end the

8  inquiry.  McGuckin, 974 F.2d 1050, 1060 (9th Cir. 1992).  In summary, "the more serious the

9  medical needs of the prisoner, and the more unwarranted the defendant's actions in light of those

10 needs, the more likely it is that a plaintiff has established deliberate indifference on the part of

11 the defendant."  McGuckin, 974 F.2d at 1061.

12    Superimposed on these Eighth Amendment standards is the fact that in cases

13 involving complex medical issues where plaintiff contests the type of treatment he received,

14 expert opinion will almost always be necessary to establish the necessary level of deliberate

15 indifference.  Hutchinson v. United States, 838 F.2d 390 (9th Cir. 1988).  Thus, although there

16 may be subsidiary issues of fact in dispute, unless plaintiff can provide expert evidence that the

17 treatment he received equated with deliberate indifference thereby creating a material issue of

18 fact, summary judgment should be entered for defendants.  The dispositive question on this

19 summary judgment motion is ultimately not what was the most appropriate course of treatment

20 for plaintiff, but whether the failure to timely give a certain type of treatment was, in essence,

21 criminally reckless.

22 V.  Discussion

23    This action is proceeding on the first amended complaint filed December 23,

24 2008.  Plaintiff alleges that defendants Brown and Harwell acted with deliberate indifference on

25 April 7, 2008, by informing him that that day would be his last dressing change.  Plaintiff alleges

26 that he showed defendants that his wounds had not healed but they prevented him from returning

1    to the clinic.  Plaintiff also alleges that defendants told him to stop taking his Bactrim.  Plaintiff

2    alleges that on April 9, 2008, without examining him, defendant McAlpine acted with deliberate

3    indifference by ordering that plaintiff could do self-applied dry dressing changes to his abdomen

4    and right thigh wound.

5            Plaintiff alleges that after defendants changed Dr. Wedell's orders regarding

6    wound changes and Bactrim, his infection became painful and worsened.  Plaintiff also alleges

7    that his infection began showing signs of scarring.  Plaintiff alleges that on April 18, 2008,

8    defendant Wedell became aware that his orders had been changed and ordered them reinstated.

9    Plaintiff alleges that defendant Bal improperly denied his administrative appeals regarding the

10   conduct of the other defendants.  As relief, plaintiff seeks money damages only.

11           Defendants argue that they are entitled to summary judgment based on qualified

12   immunity.  They do not dispute that plaintiff had a serious medical need.  They instead argue that

13   they not act with deliberate indifference.

14           In resolving a claim for qualified immunity the court addresses two questions: (1)

15   whether the facts, when taken in the light most favorable to plaintiff, demonstrate that the

16   officer's actions violated a constitutional right and (2) whether a reasonable officer could have

17   believed that his conduct was lawful, in light of clearly established law and the information the

18   officer possessed.  Anderson v. Creighton, 483 U.S. 635, 107 S.Ct. 3034 (1987).  Although the

19   Supreme Court at one time mandated that lower courts consider these two questions in the order

20   just presented, more recently the Supreme Court announced that it is within the lower courts'

21   discretion to address these questions in the order that makes the most sense given the

22   circumstances of the case.  Pearson v. Callahan, --- U.S. ---, 129 S.Ct. 808, --- L.Ed.2d ----, 2009

23   WL 128768 (January 21, 2009).

24           The undersigned first considers the first qualified immunity prong, i.e. whether

25   the facts, taken in the light most favorable to plaintiff, demonstrate that defendants violated his

26   constitutional rights.

1    Whether defendants Brown and Harwell told plaintiff to stop taking his Bactrim is

2  a materially disputed fact. In their declarations submitted in support of defendants' summary

3  judgment motion, both defendants deny telling plaintiff to stop taking his Bactrim.  At his

4  deposition, plaintiff testified otherwise.  If plaintiff's version of facts is true, the undersigned

5  would find that defendants acted with deliberate indifference to his medical needs because

6  defendants were not authorized and had no grounds to overturn the orders of a medical doctor.

7    The undersigned now turns to the issues of the dressing of plaintiff's wounds.

8  Whether on April 7, 2008, defendants Brown and Harwell told plaintiff that his wounds would

9  no longer be changed is a materially disputed fact.  In their declarations submitted in support of

10 the summary judgment motion, defendants deny telling plaintiff that April 7, 2008, would be the

11 last day his wounds were changed.  At his deposition, plaintiff testified that defendants made this

12 statement to him.  The fact that there is no medical record showing a dressing change for plaintiff

13 on April 7, 2008, or April 8, 2008, supports plaintiff's version of events.  If plaintiff's version of

14 facts is true, the undersigned would find that defendants Brown and Harwell acted with

15 deliberate indifference to plaintiff's serious medical needs as there were apparently no medical

16 grounds for such an order.

17   Whether on April 9, 2009, defendant McAlpine ordered plaintiff to change his

18 own dressing without examining plaintiff is also a materially disputed fact.  Plaintiff alleges that

19 defendant did not examine him that day.  In his declaration submitted in support of the pending

20 motion, defendant states that he examined plaintiff on April 9, 2009, before ordering the self-

21 dressing.  The entry in plaintiff's medical records from that day is not clear regarding this issue.

22 See defendants' Brodbeck declaration, exhibit A, p. 13.  The notation for self-applied dressing is

23 written by someone other than defendant McAlpine, although it is signed by him.  The

24 undersigned cannot determine from this record whether defendant actually examined plaintiff

25 that day.

26 /////

1    Whether plaintiff's wounds had sufficiently healed to warrant self-dressing is also

2  a materially disputed fact.  At his deposition, plaintiff testified that on April 9, 2008, his wounds

3  were draining and "it was bad man.  It was bad."  See Brodbeck declaration, exhibit B, p. 72: 2-

4  12.  Plaintiff also testified that on April 9, 2008, he was not given anything to change his

5  wounds.  Id., p. 78:20-22.  Plaintiff testified that he was not given anything to change his wounds

6  until April 18, 2008.  Id. at 78: 23-25, 79: 1-3.  In his declaration, defendant McAlpine states that

7  on April 9, 2008, he saw plaintiff in triage and observed that the wounds were healing.

8  McAlpine declaration, ¶ 14.  For that reason, defendant ordered that plaintiff apply self-dressing

9  to his abdomen and thigh for five days.  Id.

10    If plaintiff's version of facts is true, the trier of fact could find that defendant

11  McAlpine acted with deliberate indifference to plaintiff's serious medical needs by ordering him

12  to self-dress his wounds that he did not personally examine and that were not healing.

13    Because of the materially disputed facts, neither plaintiff nor defendants

14  McAlpine, Brown or Harwell should be granted summary judgment.

15    The undersigned observes that neither party has addressed the issue of causation,

16  i.e. whether defendants' conduct caused a delay in the healing of plaintiff's wounds and whether

17  this delay caused the injuries he alleges, additional pain and scarring.  See Harper v. City of Los

18  Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008), citing Arnold v. IBM Corp., 637 F.2d 1350, 1355

19  (9th Cir.1981) (in addition to demonstrating deliberate indifference, in a § 1983 action, the

20  plaintiff must also demonstrate that the defendants' conduct was the actionable cause of the

21  claimed injury.)

22    Regarding the temporary discontinuation of Bactrim, as discussed above, on April

23  18, 2009, defendant McAlpine told plaintiff that he had to take the Bactrim concomitantly with

24  the other drugs he was prescribed in order for them to work.  A reasonable inference from this

25  comment is that the alleged temporary discontinuance of plaintiff's Bactrim by defendants

26  Brown and Halwell caused a delay, albeit not significant, in the healing of plaintiff's wounds.

11

1    The record contains no evidence regarding whether the alleged orders by defendants regarding

2    the cleaning of plaintiff's wounds caused a delay in the healing of plaintiff's wounds.

3            Regarding plaintiff's claim of additional pain, on April 4, 2007, plaintiff was

4    prescribed Tylenol 975 mg, to keep on his person, three times a day for fourteen days.  Plaintiff is

5    apparently claiming that this prescription did not adequately address his pain.  Defendants do not

6    address this issue.

7            Regarding the issue of scarring, defendants do not dispute that plaintiff had scars

8    on his body as a result of the MRSA.  See McAlpine declaration, ¶ 21.  According to defendant

9    McAlpine, scars are a normal result from a breach of skin integrity which includes sores or an I

10    & D procedure.  Id.  Defendant McAlpine observed hyper pigmented changes at the left lower

11    quadrant of the abdomen, right interior thigh and right axilla.  Id.

12            Plaintiff is apparently claiming that he would have had fewer scars on his body

13    had the MSRA healed more quickly.  Neither party has adequately addressed this issue.

14            The undersigned now turns to the second prong of the qualified immunity

15    analysis:  whether a reasonable officer could have believed that his conduct was lawful, in light

16    of clearly established law and the information the officer possessed.  Any idea that qualified

17    immunity can exist in the context of a deliberate indifference to medical needs claim has been

18    wiped away by Conn v. City of Reno, 591 F.3d 1081, 1102 (9th Cir. 2010).  While the doctrine

19    may yet exist in some sort of extraordinary or bizarre medical context, the present situation

20    presents the run of the mill situation where a prisoner complains of not receiving medical care

21    that might have helped his problem.  If the trier of fact were to find defendants to have been

22    deliberately indifferent in not providing that care or in interfering with that care, by definition

23    they could not have been reasonable in believing their actions did not violate clearly established

24    law.

25            Regarding the claims against defendants Harwell and Brown, the undersigned

26    does not find that based on the facts of this case, a reasonable LPN would have believed that it

1  was lawful to tell plaintiff that he no longer needed to take Bactrim and that the dressing on his

2  wounds would no longer be changed.  These orders directly contradicted those made by medical

3  doctors.

4           Regarding defendant McAlpine, the court cannot find on this record that a

5  reasonable doctor would believe that ordering self-dressing of a wound without examining the

6  patient was reasonable.

7           For these reasons, defendants Harwell, Brown and McAlpine are not entitled to

8  qualified immunity.  Because of the disputed material facts, both plaintiff and defendants

9  Harwell, Brown and McAlpine should be denied summary judgment as to the claims made

10 against these defendants.

11          Plaintiff alleges that defendant Bal acted with deliberate indifference when he

12 denied plaintiff's second level appeal regarding the conduct of defendants Brown, Harwell and

13 McAlpine. A copy of this appeal is attached to the first amended complaint, court file no. 7, p.

14 28-30 of 52.  This presents a difficult situation in the deliberate indifference context.

15          In the appeal response dated June 26, 2008, defendant Bal summarized plaintiff's

16 complaint as follows:

17          You contend on March 25, 2008, you were treated for what was diagnosed as
            "spider bites," and were prescribed antibiotics.  You sought further health care
18          when the "spider bites" did not go away. You contend California Department of
            Corrections and Rehabilitation (CDCR) medical staff was aware that some
19          inmates were incorrectly diagnosed with "spider bites," when in fact they had
            Methicillin-Resistant Staphylococcus Aureus (MRSA) infection.  You were
20          diagnosed and on April 4, 2008, had surgery for MRSA infection.  A physician
            ordered dressing changes until the wound healed.  On April 7, 2008, a nurse told
21          you that that day would be the last time your dressing was to be changed.  You
            showed her a copy of the physician's order, but the dressing has not been changed
22          since that day.  The actions or non-actions by medical staff are a violation of your
            eighth amendment rights and have caused additional stress, pain, and suffering in
23          your postoperative condition.

24          You request 1) adequate medical care, including following all doctor's orders,
            daily change of dressing, and follow-up care; and 2) you further request $50,000
25          for distress and pain caused by the medical staff's deliberate indifference in
            refusing you follow-up treatment.

26 Id.

1    The appeal response states, in relevant part,

2    Your appeal was PARTIALLY GRANTED at the FLR.  The first level reviewer
     responded as follows:

3

4    On March 30, 2008, nursing assessment for your skin condition.  Dr. Reddy, on-
     call physician, ordered Bactrim DS one by mouth, twice per day for ten (10) days;
     Ibuprofen 600 mg by mouth three (3) per day, as needed for five (5) days, and Dr.
5    Wedell saw you April 4, 2008, and diagnosed multiple abscesses.  The right thigh
     wound was cultured and you were started on Rifampin 600 mg by mouth twice
6    per day for fourteen (14) days.  One nursing note on April 4, 2008, documents
     dressing changes.  The next documentation is April 18, 2008, in my clinic where
7    the right axilla abscess was found to be healed with active drainage on the anterior
     abdominal wall and right thigh area.  Hibiclens was given for cleansing of your
8    cell.  Re-evaluation on April 24, 2008, showed all lesions healed.  Nasal swab for
     colonization was taken.  You were seen again on May 2, 2008, and appraised that
9    the swab for colonization was negative.  You have been receiving adequate
     medical care.
10
     Your request for monetary compensation is beyond the scope of the appeals
11   process, therefore denied.

12   In requesting a Second Level Review, you state "it is my contention that doctor's
     orders were not followed-dressing being changed daily–resulting in a medical
13   refusal, denial of care known as deliberate indifference.  There is also the matter
     of compensation that needs to be resolved."
14
15   SECOND LEVEL APPEAL RESPONSE: Nursing staff follows the doctor's order
     of dressing change of infected skin lesions daily until needed.  On April 9, 2008,
16   Dr. McAlpine ordered self-applicable dry dressing change daily to abdomen and
     legs.  This is a useful step to allow you to participate in your own care and
17   promote better healing.  There was no refusal, denial of care, or deliberate
     indifference.  As stated on the First Level Review (FLR) by Dr. McAlpine, you
18   were given adequate medical care.

19   Again, monetary compensation is beyond the scope of the appeals process.

20   Id.

21         Defendants sued in their individual capacity must be alleged to have: personally

22   participated in the alleged deprivation of constitutional rights; known of the violations and failed

23   to act to prevent them; or implemented a policy that repudiates constitutional rights and was the

24   moving force behind the alleged violations.  Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th

25   Cir. 1991); Hansen v. Black, 885 F.2d 642 (9th Cir. 1989); Taylor v. List, 880 F.2d 1040 (9th Cir.

26   1989).  "Although a § 1983 claim has been described as 'a species of tort liability,' Imbler v.

14

1    Pachtman, 424 U.S. 409, 417, 96 S. Ct. 984, 988, 47 L.Ed.2d 128, it is perfectly clear that not

2    every injury in which a state official has played some part is actionable under that statute."

3    Martinez v. State of California, 444 U.S. 277, 285, 100 S. Ct. 553, 559 (1980).  "Without

4    proximate cause, there is no § 1983 liability."   Van Ort v. Estate of Stanewich, 92 F.3d 831, 837

5    (9th Cir. 1996).

6                The search, which was performed in accordance with this constitutionally valid
              strip search policy, was subsequently ratified by the School Board when Mr.
7              Williams filed a grievance.  Therefore, Williams' only grasp at evoking municipal
              liability under § 1983 is to show that this subsequent ratification is sufficient to
8              establish the necessary causation requirements.  Based on the facts, the Board
              believed Ellington and his colleagues were justified in conducting the search of
9              Williams.  There was no history that the policy had been repeatedly or even
              sporadically misapplied by school board officials in the past.  Consequently, the
10            School Board cannot be held liable for the ratification of the search in question,
              because this single, isolated decision can hardly constitute the "moving force"
11            behind the alleged constitutional deprivation.

12    Williams v. Ellington, 936 F.2d 881, 884-885 (9th Cir. 1991).

13                This court is unwilling to adopt a rule that anyone involved in adjudicating

14    grievances after the fact is per se potentially liable under a ratification theory.  However, this is

15    not to say that persons involved in adjudicating administrative disputes, or persons to whom

16    complaints are sometimes made, can never be liable under a ratification theory.  If, for example,

17    a reviewing official's rejections of administrative grievances can be construed as an automatic

18    whitewash, which may have led other prison officials to have no concern of ever being

19    reprimanded, a ratifying official may be liable for having put a defective policy in place.

20                The undersigned does not find that defendant Bal's response to plaintiff's

21    grievance constituted a whitewash which would have led the defendants to have no concern for

22    being reprimanded regarding their treatment of plaintiff.  By the time defendant Bal reviewed the

23    grievance, plaintiff had been successfully treated for MRSA and his wounds had healed.

24    Defendant Bal did not act with deliberate indifference in responding to this grievance.

25    Accordingly, defendant Bal should be granted summary judgment.

26    \\\\\

1        Accordingly, IT IS HEREBY ORDERED that the Clerk of the Court shall assign

2   a district judge to this action;

3        IT IS HEREBY RECOMMENDED that:

4        1.  Plaintiff's September 1, 2009, summary judgment motion (no. 18) be denied;

5        2.  Defendants' October 16, 2009, summary judgment motion (no. 22) be granted

6   as to defendant Bal but denied as to defendants McAlpine, Brown and Harwell.

7        These findings and recommendations are submitted to the United States District

8   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-

9   one (21) days after being served with these findings and recommendations, any party may file

10  written objections with the court and serve a copy on all parties.  Such a document should be

11  captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the

12  objections shall be served and filed within seven (7) days after service of the objections.  The

13  parties are advised that failure to file objections within the specified time may waive the right to

14  appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

15  DATED:   03/04/2010

                                             /s/ Gregory G. Hollows
16                                           _____
17                                           UNITED STATES MAGISTRATE JUDGE

18

19
    coo2856.sj
20

21

22

23

24

25

26